Nicely done for your first time. Was that your first time? Mr. Williamson. Good morning. It pleases the court and Ms. Clark. There are occasions when I read the briefs prior to oral argument, it occurs to me that a reply brief should have been filed. And this may be one of those occasions because as I was looking at page 13 of the appellee's brief today, there is reference to the application of the United States Supreme Court decision in gross versus FBL financial services as being applicable to an age discrimination case under the Illinois Human Rights Act. And I'm not aware of any Illinois case that has adopted the gross decision for cases under the Illinois Human Rights Act for age discrimination. And of course, the Illinois Supreme Court has on occasion deviated from federal decisions for employment litigation and not followed federal precedent. So if the assumption is that the gross decision applies and that the plaintiff must prove that age was the reason for the adverse act, I contest that. And I don't think there's any case law suggesting that argument. I do understand that Illinois courts many times look to federal decisions because there's a plethora of them each time there's an argument for employment discrimination, but I don't think that particular situation has yet been followed by Illinois courts. Now, I know you've read the briefs. You understand that this case is a two-count complaint, one for age discrimination and two for promissory estoppel. And it arises out of a situation where the plaintiff, who's a long-time employee of Caterpillar Inc., determines on May 1, 2008, to submit his voluntary retirement application and fills out the paperwork. Then in the first or second week in June of 2008, and I believe the exact date was June 12, there is an all-employee meeting at the Mossville facility where Mr. Villiger works, at which point in time a Caterpillar representative named Paul Robleski indicates to all those employees it appears that we're no longer going to be producing engines at Mossville. And, in fact, gives an end date to the production, which is December 29, 2008. Now, at this point in time, Mr. Villiger has the experience, as shown in the record, and I think it's referenced as R132 in the record, he knew that back in 2002, when Caterpillar was closing a facility, they had a plan, a process, whereby they initially offered a voluntary separation agreement. And after they got done with the voluntary separation agreement, they proceeded to an involuntary separation situation. Well, what's the evidence that Caterpillar had that plan in June of 2008? Pardon me? In 2008? Yeah. Well... When they met with... Well, I'll get to that in a second, but that's what he asked the HR person, Linda Goins, four days later. That's what he goes to find out. Do you have such a plan? And she says, it's highly unlikely we're going to have such a plan because of the costs. That is the evidence at that point in time of what the plan is. Villiger very much suspects there is going to be a plan. Just like there was in 2002, goes to the HR person to ask if there is, and she says at that point, I think she says I don't know for sure, but she says it's highly unlikely there's going to be such a plan because of the costs involved. Now, Villiger... Go ahead. There was a belief that Goins was telling the truth. Isn't that what the testimony was? Villiger says that he believes it's true when Goins says she doesn't know for sure. That's true. But again, this is a summary judgment case based on circumstantial evidence, and what Goins does or does not know at that point in time about the existence of the plan is a point of evidence, I think. But yes, Villiger believes her, says afterwards in his deposition he believes at that point in time she was telling the truth. Now, when she learns the truth, we don't know because we never got that far in the evidence. But again, there is no evidence that Caterpillar had a separation agreement plan. The only evidence Caterpillar relies upon is the verification of their own counsel in answer to the complaint without any further explanation or indication as to when the plan was evolved. From the standpoint, Judge, of knowing exactly when Caterpillar formulated this plan, it's true the case didn't get to that point in the trial court because Villiger acts on what Goins tells him. There is not going to be a plan. And he then goes ahead with the voluntary retirement on July 1st. Doesn't find out until the end of the year, the letter I think sent in the first part of December, that there is such a plan. So again, I'll state from that standpoint it isn't known precisely yet other than the first week of December as to when that plan was formulated or acted upon. Does the complaint allege that the plan existed when Goins made that statement? I don't think we can say that. I don't think we can say that because we don't know. And Caterpillar never put any evidence in the record either as to how many people were involved in the plan in December 2008 or when the plan was formulated. They made that decision not to go into any of that evidence. And so, no, we don't know the exact date when the plan was formulated. And I don't think I can suggest otherwise in the record. Well, this was a summary judgment motion, not a pleading motion. It was a summary judgment motion. Although the trial court didn't base the summary judgment on any aspect of when the plan was formulated. I think if you read the trial court's opinion, the trial court goes on the assumption that there was such a plan. It was formulated sometime in the summer of 2008, which is a reasonable assumption. I mean, Caterpillar can't decide in two days they're going to have a voluntary separation agreement. That has to take some forethought and planning well ahead of time. But the decision is not based on when the exact formulation of the voluntary separation agreement was done. And I don't think there's any reference to it by the trial court in its opinion. The trial court bases its opinion on the age discrimination case. It makes two references. One, it says, I'm not sure there's an adverse job action here, which is a reasonable discussion. But as I pointed out in the Owens decision, under Illinois law, really the only facet that the plaintiff must show to prove an adverse job action is if there's harm done to the plaintiff. And the harm, of course, is the $81,000 he lost when he wasn't given an additional year of compensation like everybody else was in December of 2008. But he voluntarily terminated before all that was done. He made the decision initially to voluntarily terminate, puts that decision on hold, and specifically tells Goyance, I'm going to put my retirement decision on hold, effectively saying, based on what you're telling me now. And then he asked her the questions. Is there going to be a voluntary separation agreement? And again, she answered several different ways, and there were several different interpretations in the record, including her subsequent affidavit. But she never denied, as you'll notice, that she said to him, it's highly unlikely there's going to be a separation agreement because of the costs involved. She does not deny that. The trial court then goes on to base its decision on the elements of fraud in the inducement, which the plaintiff has never alleged in this case and doesn't allege before you now. It goes through the elements of fraud in the inducement and bases the age discrimination summary judgment on fraud in the inducement. And I think that, frankly, is clear error. There's no case law that suggests that. We didn't allege it in the complaint. And the elements of the complaint, again, are set out in the Owens decision. I believe that's page 8 of the plaintiff's brief. The four elements the plaintiff must prove in any employment discrimination case, and one of which is an adverse job action. Again, we don't think there's a question about that when he's got a monetary loss of $81,000. So we don't think that the trial court's decision was based on any law. I want to point out to you again that the plaintiff was aware of the prior process when Caterpillar shuts down a plant or changes production methods at a plant, whereby there's going to be a reduction in force, and specifically goes to Goins and Asker, those questions. The other element of proof that's probably at issue in the case is whether the plaintiff has shown similarly situated employees were treated differently. He's identified three different employees. Caterpillar attacks the similarly situated status of those employees in their brief. But, again, that's a summary judgment. And I don't think there's any doubt that there's material issue of fact as to whether the three employees we've identified are similarly situated employees. I'll then move to the promissory estoppel issue. And, again, the trial court essentially says on the last page of his opinion that the analysis that I have used for fraud in the inducement applies to the promissory estoppel case. And I don't think that's true. I think the elements of promissory estoppel are different than fraud in the inducement. Now, the one element of promissory estoppel that's undoubtedly at issue in the case is does Goins' statement to Villager on or about June 16, 2008, constitute an unambiguous promise? And I have tried to cite, there's not a plethora of cases in this area of case law. I've tried to cite, I think, three different cases that would show courts have interpreted that type of comment to be an unambiguous promise. I mean, he's asking your honors, I intended to retire, but I'm not going to do it. I mean, this is only five or six months he has to wait in order to get whatever the enhanced package is going to be offered by Caterpillar. And he's saying to her, I'm putting that on hold unless there's not going to be an enhanced package, an inducement package for me to retire if I stay six months longer. And she answers to him, it's highly unlikely based on what I know because of the costs involved. We think that's an unambiguous promise under Illinois law that constitutes promissory estoppel. And again, I don't think any of the other elements are at issue in this case. Does Villager rely on that promise? Of course he relies. Does he rely to his detriment? Yes. To an $81,000 difference in what he would have received had he stayed until December of 2008. And does he have damage? Of course he does. So I think that the only real issue in the promissory estoppel argument is, is it an unambiguous promise? How many cases are there where a speculative prediction is made into an unambiguous promise? Well, I've cited three that probably would fit within that classification. But maybe additional research going around the country would indicate additional cases. You're saying it's a speculative prediction, Your Honor, and I don't know that I concur with that analysis as to what Ms. Goins is saying to Gerald Villager. I think when she says it's highly unlikely, this is the HR person. This is the person Caterpillar is presenting to Villager to talk about putting his retirement plans on delay until he finds out about a specific problem, a voluntary separation agreement, for which he'll receive more money and with which he has knowledge because of his prior employment with Caterpillar. You know, an event that occurred just six years prior to that. So I don't think that that is a speculative prediction at that point in time. Everyone is operating within a realm of asking specific facts. Villager wants to know specifically, is there going to be a voluntary separation agreement? And he's asking within a specific context, June 16 to December 29 of 2008, and the designated person Caterpillar provides, she's the HR person at Mossville, tells him it's highly unlikely. Didn't she really tell him, your guess is as good as mine? I don't think so. I don't think so. He's not in the HR department. He doesn't know what Goins knows. He's saying that after the fact when he's testifying. Don't you have to allege she knew that there was some sort of policy message? No, no, I don't think so. And we can't allege that. We cannot allege that, but I don't think we do. I think the case law supports the conclusion that her statement to him is an unambiguous promise. Unless there are any other questions, I'll conclude my argument. Thank you. Ms. Clark, when you're ready. Good morning, Your Honors. May it please the Court, my name is Kathryn Clark, and I'm counsel for the defendant, Caterpillar Incorporated, in this matter. There's a lot of things that Mr. Williamson hit on in his argument. In many places I believe he miscited the record. I'll try to highlight those as we go on. But before I get into the merits of the claims, I would just like to first address this timing issue in terms of when Caterpillar came up with the plan to offer a voluntary separation offer. And let's be clear, this was not a plant closure. This was a voluntary separation offer. There is nothing in the record that it was a plant closure. It was an announcement to get rid of a piece of the manufacturing business and send that to Texas. So there is no evidence in the record of when Caterpillar came up with this plan. And the reason for that is that we believe that the timing of when they came up with the voluntary separation plan is really irrelevant. Villager alleges that he spoke only to Goins about this plan. He discussed the possibility of the voluntary separation offer only with her. It is undisputed that she did not know about the voluntary separation offer in June of 2008. She's put in sworn testimony that she did not know about the offer in June of 2008. Mr. Williamson said we don't know when she found out about the offer. That is untrue. She testified that she found out about the offer on December 22, 2008, when Caterpillar announced it to everybody at the company. It was a company-wide offer, and that's when she found out about it. So we know she didn't know about the offer when he spoke to her. Is that a relevant factor? It is a relevant factor, I think, because... Well, in terms of a promissory estoppel claim, I think that it's relevant in the sense that she didn't know whether it existed. So all she said to him was that it was highly unlikely. Throughout Mr. Villager's brief and in Mr. Williamson's argument, I have heard repeatedly that she said there's not going to be a plan, there's not going to be an offer. That simply is not the case. If you look at Mr. Villager's sworn testimony regarding his conversation with Linda Goins, when he was asked, what did she say to you, he answered three ways. She told me it's highly unlikely that there's going to be an offer because of costs. She told me she has no knowledge of such an offer, and she told me that she was unaware of such an offer. She did not make any definite statements that there wasn't going to be one, and she certainly didn't lie to him. He sought out her. She was not put out by Caterpillar to go speak to Mr. Villager and go tell him, hey, go forward with your retirement, there's not going to be an offer. She's sitting at her desk. She sits in the HR department. She actually was not the HR representative, but she does sit in HR. He sought out her and asked her about it. And she told him what she thought based on what she knew, and I think that Justice Wright is correct that essentially she's saying your guess is as good as mine. I think it's unlikely because of costs. I don't know about it. So we know that she didn't know about it in June of 2008. We know that she didn't find out about it until December of 2008, and it's undisputed that Caterpillar didn't announce this plan to employees until December of 2008. So regardless of when Caterpillar came up with the plan, Mr. Villager would not have learned about it before his July 2008 retirement. He only talked to Ms. Goins about it. She didn't know about it. And he wasn't there anymore when the announcement was made to eligible employees. So that's the timing issue. In terms of the age discrimination issue. Just let me know briefly. You said she wasn't part of the HR department? She was not the HR representative. So Mr. Williamson said that she's the HR representative. Caterpillar was putting her out there as the HR representative. She sat in the HR department. Her job was to act as a liaison for interns. And so she was sitting in HR, and when he came to HR, she was at her desk. But she was not put out there as a person he was supposed to talk to about retirement. He wasn't informed. She's the person that knows about layoffs and voluntary separations offers. She didn't seek him out. He walked into the HR office. She happens to be sitting there. And they had a casual conversation between themselves about their own retirement plans. In terms of the age discrimination case, Mr. Williamson has said that the lower court's decision should be overturned because it was based on fraud. So there are multiple bases of fraud analysis. There are multiple bases on which the court can affirm summary judgment in this case. And one of those is one of the bases on which Judge Debicki relied, which is that Villager didn't present direct evidence of discrimination. His decision does say that. To prevail under a direct method of proof, Villager bears the burden of coming forward with direct or circumstantial evidence that Caterpillar took an adverse employment action against him because of an impermissible purpose, so based on his age. Mr. Villager did not meet this burden. As an initial matter, there's no evidence that Caterpillar took an adverse employment action in this case. An adverse employment action is something that materially affects your terms and conditions of employment, so your hours of work, your wages, something like a termination, a suspension, a transfer, a demotion. Here, Caterpillar didn't do anything to Villager. He's the one who researched retirement. He's the one who requested and completed retirement paperwork. He's the one that went to talk to Ms. Goins on June 16th. After he spoke to her, he was in the exact same position he was on June 15th, completely free to keep working at Caterpillar until he decided to retire. Caterpillar didn't force him to retire. They didn't advise him to retire. They didn't even encourage him to retire. This was a decision he made completely on his own. Setting aside that he can't show that Caterpillar did anything to him, Mr. Villager's claim also fails under the direct method because he's presented no evidence that either Goins or Caterpillar was motivated by his age. So just as we discussed, he doesn't believe that she would have said something different to him if he was a younger employee. That's his testimony. So he's saying, if I was 10, 20, 30, 40, 50, 60, she was going to say the same thing to me. He admits that. He's not aware of any younger employee who learned of the VSP, the Voluntary Separation Program, before December of 2008. He's not aware of any younger employees who were advised to delay retirement before the Voluntary Separation Program was announced. With respect to the announcement of that offer, the offer was made to both younger and older employees. It was made to business units across their ages. Mr. Villager admits that. Mr. Villager's older brother benefited from the voluntary separation offer. He retired pursuant to it. And Mr. Villager testified that, hey, had I stayed until December 2008, I would have been eligible for the voluntary separation offer. And that's obviously what the issue is in this case. So he's admitting that this was offered to older employees. It was offered to younger employees. It wasn't a plan to benefit one age class versus another age class. And those admissions belie any argument that Goins or Caterpillar based their plans on employees' age, let alone his age. And we believe those admissions are fatal to his discrimination claim. So in terms of that's the direct method. There's also the indirect method of proof. And we believe Mr. Villager's claim fails under the indirect method as well. So there he is to show he's a member of a protected class. He met Caterpillar's legitimate performance expectations. Again, he suffered an adverse action. And Caterpillar treated similarly situated employees more favorably. We don't believe Mr. Villager's met his burden of setting forth a prima facie case. So as previously discussed, we have no adverse employment action. His brief says this was an unforced voluntary retirement. He admits that it was voluntary. In terms of the similarly situated analysis, contrary to what Mr. Williamson said, we do not attack him on whether the individuals he identified are similarly situated. What we stated in our brief is that he hasn't identified similarly situated younger employees who were treated better at all. He's identified his brother, who's two years older. He's identified Larry Pickett and Lauren Wilmont, who are his age or younger. We don't know if they're under 40. It's his burden to come forward with this evidence. He could have requested that discovery. He didn't. So we don't know if they're under 40. And he's testified that he doesn't even really know what separation benefits Mr. Pickett or Mr. Wilmont got. He's just assuming what they got based on what his brother got. So he can't meet the adverse employment action prong. He can't meet the similarly situated prong. Even if he could, his claim still fails because Goins and Caterpillar had legitimate, non-discriminatory reasons for their actions. As we've discussed, Goins' reason for her action is she told him she didn't know. You know, I don't have any knowledge because she didn't have any knowledge. It wasn't because of his age. She didn't know. Caterpillar didn't inform Villager of the VSP because he didn't work there anymore in December of 2008. And Villager set forth no facts that those are pretexts for discrimination. In other words, that they're lies to cover up discrimination. And Mr. Villager has argued in his brief that he doesn't need to show pretexts in the age discrimination context. The Owens case that he cites specifically says that pretext is an element of the indirect method of proof in a disability discrimination case. And the Illinois Supreme Court has adopted that pretext analysis in the Zotereka case. So pretext is an element of proof. And here he can't show that anybody's lying to cover up discrimination. He's testified he doesn't even believe that Ms. Goins is lying. So accordingly, we think he has no evidence of pretext. And at the end of the day, what the age case comes down to is that he made a poorly timed retirement decision. So while it may seem fair to him that he missed out on these voluntary separation benefits, the record doesn't show that Caterpillar based its decision... It's more than that, though. He made a poorly timed retirement decision with full knowledge that there was going to be a major adjustment in the business that might result in voluntary termination, separation agreements. Yes. He did it knowing. Yeah, he did it... It's not like he didn't know that there was going to be this major adjustment. Exactly. He knew there was going to be a major adjustment. So on the promissory... That brings me... That's a nice segue into the promissory estoppel claim, is one of the things that Judge Dubecki said was that there was no reasonable reliance in this case. And we agree with that, because here, when he talked to Ms. Goins, and she said, it's unlikely, I'm unaware, I don't know, Mr. Villager said, well, I think there is going to be an offer. And Mr. Villager testified, at that time, I definitely, quote, unquote, definitely believed there was going to be a voluntary separation offer. So if Mr. Villager didn't believe that what Ms. Goins was telling him was true, how could he have reasonably relied on that statement? We don't need a jury to tell us whether it's reasonable to rely on something you think is false in making your retirement decision. So for that reason, on the promissory estoppel piece, we believe there's no reasonable reliance. We would also, obviously, agree with Judge Dubecki that the promissory estoppel claim fails because there was no unambiguous promise. Like I said, throughout the brief and during the argument today, there's been an assertion that Ms. Goins said, there will be no severance plan, there won't be such an offer, they're not contemplating such an offer. If we go back to the record and actually look at the sworn testimony, that's not how Mr. Villager has described the conversation. He described it as, it's unlikely, I have no knowledge, I'm not aware. And Your Honor is exactly right. The cases with these mere predictions, they don't result in a finding of an unambiguous promise. And the cases that Mr. Williamson cites in his brief are not cases that had mere predictions. One of the cases involved a contract to buy stock at a certain price, a written contract that was found to be an unambiguous promise. Another of the cases was a case where the person said, I promise that I'm going to do your computer code. I'm going to take your ideas, maybe I'll turn them into computer code, I think maybe I can make these into computer code. Work with me and I'll turn this into computer code. And then the mortgage case that he cites in his brief, in that case the mortgage officer said, there are a number of loans available to you. He gave her the stuff to complete the loan application. He worked with her for eight months. It's very different from this case where it's a one-off casual conversation where Mr. Villager's come forward to Ms. Goins, he's asked her about it, and she's made a mere prediction. So based on those undisputed facts, there's no evidence that Caterpillar made an unambiguous promise to Villager or that he reasonably relied on that promise to his detriment. And if there are no other questions, we would just respectfully request that the order of granting summary judgment be affirmed. Thank you, Ms. Clark. Thank you. Mr. Williamson? Thank you, Your Honor. Ms. Clark brought up the issue of discovery, and there really isn't any issue of discovery in this appeal. Suffice to say, all of these things were sought out in discovery, and there were no answers by Caterpillar. I'm just going to give you a brief comment on that. When Caterpillar filed their motion for summary judgment, they didn't put in a list of all the people who were offered in the December 2008 plan. When the plaintiffs said two different people who were younger than me were given this buyout in the December plan, identified them by name, one of which is Larry Wilmot, Caterpillar, in its summary judgment response, did not tell the trial judge what their date of birth was. And they've got that in every personnel file. They intentionally did not put in a lot of information in this case. And when I said earlier that Ms. Goins, we don't know what she did not know, a counsel immediately says, oh, she filed her affidavit and says she finds out about the plan in December of 2008. That's what she said in her affidavit. That may not be true. And that's exactly what the trial court did, took that affidavit at face value. And I don't think that's proper in a summary judgment. Now, when counsel denigrates Ms. Goins, says she was an insurance person in the HR department, didn't know about any of these things, and she says that in her affidavit, one has to ask the question, why doesn't Goins tell that to Villiger? Why didn't she immediately say to him, I don't know anything about the buyout issue. That's not part of my job. Yes, I'm in the HR department, but you're talking to the wrong person. Go talk to so-and-so who knows about buyouts and what the possibilities are. That isn't at all what happened. And Villiger is presenting himself very directly to Goins. I'm putting my retirement plans on hold because of the announcement by Robleski. I know what you did in 2002, and are you going to do it again? And, Your Honor, I must, upon further reflection, point out to you that I don't think when Caterpillar actually formulated the voluntary separation is relevant to the age case. It's certainly relevant to the promissory estoppel case. We have to prove four elements for age discrimination. He's in the protected class, and that's undisputed. He suffered an adverse job action. That may be disputed, but I think we've proved it. They treated similarly situated employees differently, and, again, that's undisputed for summary judgment purposes. And he suffered damage. That's undisputed. So I'm not sure that the exact timing when they formulate this plan is relevant to the age discrimination case. And without getting into a totally different argument, I want to point out again I tried to cover the difference between direct and indirect discrimination in employment litigation. Again, citing the Troop case from the Seventh Circuit, and there's a distinction in a direct case. And essentially I think the distinction is we don't even have to show a similarly situated employee status in a direct case of employment discrimination for age discrimination. But I don't want to get too far afield from the argument. This case should not have been decided the way it was by the trial court. I understand you can affirm on a different basis the trial court was in error on both counts of the complaint. We believe the case should be reversed. If further evidence is developed at some point in time at the trial court level as to when they formulated this plan, such that they could not have contemplated age discrimination for Mr. Billiger, we'll accept that. But that's not what's before you in the record right now. And what the record indicates is that the trial court committed reversible error on both counts 1 and 2. Unless you have any further questions, I'll conclude my argument. Thank you very much. We will be taking the matter under advisement and rendering the decision without undue delay. For now, there will be a brief recess for a panel discussion.